# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

Nos. 23-3065, 23-3162, 24-1328

UNITED STATES OF AMERICA

v.

ZUMAR DUBOSE, ABDUSH DUBOSE, & KARIEM DUBOSE

Zumar Dubose,
*Appellant in No. 23-3065*
Abdush Dubose,
*Appellant in No. 23-3162*
Kariem Dubose,
*Appellant in No. 24-1328*

Appeal from the U.S. District Court, E.D. Pa.
Judge Wendy Beetlestone
Nos. 2:20-cr-00453-001 through 003

Before: Matey, Chung, and Ambro, *Circuit Judges*
Submitted Under Third Circuit L.A.R. 34.1(a) Jan. 13, 2026
Decided: January 20, 2026

NONPRECEDENTIAL OPINION[*]

CHUNG, *Circuit Judge*.  Appellants are brothers who appeal their convictions arising from

a scheme to defraud the United States Postal Service ("USPS"), the United Parcel Service

("UPS"), and Citizens Bank.  They raise multiple arguments on appeal.  We will affirm the

judgments.

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding
precedent.

## I.  BACKGROUND[1]

On August 26, 2021, a federal grand jury returned a superseding indictment (the "Indictment") charging three brothers, Zumar, Abdush, and Kariem Dubose, with committing mail fraud, in violation of 18 U.S.C. § 1341; wire fraud and attempted wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349; bank fraud and aiding and abetting bank fraud, in violation of 18 U.S.C. §§ 1344(2) and 2; and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).[2]  All three brothers pleaded not guilty, and the case went to trial.  Abdush and Kariem were represented by counsel throughout.  Zumar initially proceeded pro se but the District Court found that Zumar forfeited his right to self-representation before trial began and appointed counsel.

The Government presented extensive evidence that the Dubose brothers engaged in a coordinated scheme to defraud USPS, UPS, and Citizens Bank by filing more than 1,200 fraudulent claims for lost or damaged packages under fake names, and then depositing the proceeds received from those claims into Citizens Bank accounts of shell businesses they created.  The jury found Zumar guilty of all charges; Abdush guilty on Counts 1–8, 11–13, and 17; and Kariem guilty of Counts 9, 10, and 14–16.  Kariem was sentenced on February

---

[1] Because we write for the parties, we recite only the facts pertinent to our decision.

[2] We will refer to each Appellant by his first name to avoid confusion.  The Indictment charged: Zumar and Abdush with mail fraud at Counts 1–7; all three with mail fraud at Counts 8–10; Zumar and Abdush with wire fraud at Counts 11–13; all three with wire fraud at Counts 14 and 15; Zumar and Kariem with bank fraud and aiding and abetting bank fraud at Count 16; and Zumar and Abdush with conspiracy to commit money laundering at Count 17.

15, 2024, Zumar and Abdush were sentenced a month later, and these timely appeals followed. Zumar is proceeding pro se; Kariem and Abdush are represented by counsel.

Kariem and Abdush raise three issues on appeal: (1) whether the trial evidence was sufficient to sustain the guilty verdict; (2) whether the District Court violated their Fifth and Sixth Amendment rights by denying their attempt to present a trial defense based on 49 U.S.C. § 14706 (the "Carmack Amendment"); and (3) whether the District Court erred in denying them a new trial because the Government shifted the burden of proof during its summation. Zumar separately raises seventeen issues, including arguments on the sufficiency of the evidence.

## II. ANALYSIS[3]

### A. There Is Sufficient Evidence to Support the Guilty Verdict

All three Dubose brothers appeal the District Court's denial of their motion under Federal Rule of Civil Procedure 29(a) for a judgment of acquittal. They argue that the evidence at trial was insufficient to support the jury's guilty verdict on the counts they were respectively convicted. The Government responds that the evidence was overwhelming.[4]

---

[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 3742. Because Zumar is proceeding pro se, we liberally construe his filings. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[4] We exercise plenary review over a district court's ruling on a Rule 29(a) motion. United States v. John-Baptiste, 747 F.3d 186, 201 (3d Cir. 2014). When examining a sufficiency of the evidence challenge pursuant to Rule 29(a), we "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[] beyond a reasonable doubt." United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005) (quotation marks omitted).

3

Abdush first challenges his mail and wire fraud convictions (Counts 1–8, 11–13). The elements of mail and wire fraud are (1) a scheme to defraud, (2) use of the mails or wires to further that fraudulent scheme, and (3) the specific intent to defraud. United States v. Syme, 276 F.3d 131, 142 n.3 (3d Cir. 2002). Abdush argues that the Government failed to prove each substantive fraud count because, as to each underlying claim check, it did not directly prove that the payees on those checks "were either fictitious companies or people." Opening Brief of Abdush and Kariem Dubose ("A/K Br.") at 7. Abdush also claims that "no evidence was presented that the items that were the basis for the claim checks/envelopes in the counts of conviction were not lost and/or damaged as claimed." A/K Br. at 9. For his part, Kariem argues that he lacked the *mens rea* to commit mail, bank, and wire fraud—the intent to defraud—because the Government did not prove that he knew about Zumar's scheme to defraud the USPS or UPS. He also contends that no evidence was presented that "link[ed] [him] to the mailing and receiving of the packages." A/K Br. at 14. Finally, Zumar presents similar arguments that the evidence was insufficient to sustain his guilty verdicts.

The evidence was sufficient for a rational jury to find each defendant guilty beyond a reasonable doubt. Rivera, 74 F.4th at 137. The evidence showed that Zumar and Abdush participated in the scheme by, among other things, purchasing postage and sending parcels via USPS and UPS; submitting false claims to those entities stating that the packages were lost, damaged, or delivered with missing contents; and depositing the claims checks received in connection with those claims into accounts at Citizens Bank of business entities they created. While the Government did not present direct evidence as to each fake

4

claimant and each fake shipment, the evidence of fraud was ample as to each substantive count. For instance, the Government showed that the brothers used the same receipts to support multiple claims, filed the claims under names that on their face appeared fabricated, and exchanged text messages wherein they discussed the scheme. The evidence was also sufficient for a rational jury to find that Kariem knowingly participated in the scheme. He corresponded with Zumar about multiple topics from which a jury could conclude he knew of the scheme, including opening one of the business accounts at Citizens Bank in response to the closure of another due to fraud, depositing proceeds derived from the false claims into that account, and discussing with Zumar an investigation that the bank launched upon belief that the account was being used to perpetrate fraud.

Abdush challenges the sufficiency of evidence to support his money laundering conviction (Count 17) and asserts that the Government did not prove that the allegedly laundered funds were derived from criminal activity. However, for the reasons set forth above, a rational jury could find that the Government proved beyond a reasonable doubt that the proceeds Abdush obtained from USPS and UPS were born out of his fraudulent scheme. We thus also reject this challenge.

### B. Bank Fraud Does Not Require that the Defendant Intend to Defraud the Bank

Kariem argues that even if the Government established that he opened the Citizens Bank account with the intent to defraud, he did not commit bank fraud because "Citizens Bank was not the intended victim of the fraud." A/K Br. at 22. This argument is foreclosed by Loughrin v. United States, 573 U.S. 351 (2014), in which the Supreme Court held that 18 U.S.C. 1344(2) does not require proof that the defendant intended to defraud the bank,

5

but only that he intended to obtain property in the custody of the bank and that this end was accomplished "by means of" a false statement. The Supreme Court was clear that this is "satisfied when … the defendant's false statement is the mechanism naturally inducing a bank … to part with money in its control." Loughrin, 573 U.S. at 363. In this case, the evidence showed that after Citizens Bank detected criminal activity in an account held by the shell corporation, 4 Entertainment, it placed a hold on the account. Kariem and Zumar responded by falsely representing to Citizens Bank that the payees on the checks deposited into the account were "doing business as" 4 Entertainment. When their attempt to convince Citizens Bank to release the hold failed, they filed fraudulent lawsuits against the Bank. Because the evidence was sufficient to establish that Kariem provided false information to Citizens Bank and to a state court in an "attempt[] to execute" a scheme to obtain money under the custody of Citizens Bank and contained in the shell account, 18 U.S.C. § 1344(2), his argument fails.

## C. The District Court Did Not Violate Abdush's and Kariem's Fifth and Sixth Amendment Rights by Denying Their Attempt to Raise the Carmack Amendment as a Defense

Abdush and Kariem next argue that the District Court deprived them of their right to present a complete defense under the Fifth and Sixth Amendments by denying their attempt to present a trial defense based on the Carmack Amendment. The parties dispute the standard of review: Abdush and Kariem contend we review this issue de novo as a constitutional challenge, whereas the Government argues we review it for abuse of discretion as an evidentiary challenge. Whether we review de novo or for abuse of discretion, this challenge fails as evidence of the Carmack Amendment was irrelevant.

6

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690 (1986) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)). To prevail on a challenge to evidence excluded at trial, a defendant must show, as a threshold matter, that the evidence was relevant. Fed. R. Evid. 401. Although Abdush and Kariem argue that they "intended to offer as a defense [their] reliance on the terms of the Carmack Amendment when [they] submitted claims to the various carriers," A/K Br. at 27, the Amendment is wholly irrelevant, and thus not a defense, to their charges. This is because even if that statutory framework applied (it does not), it would not permit the submission of fabricated claims. 49 U.S.C. § 14706.

**D. The Government Did Not Shift the Burden of Proof in Its Closing Argument**

Finally, Abdush and Kariem argue that the Government, in its closing argument, placed upon them the burden of proving their innocence. Because this was not challenged in the District Court, we review for plain error.[5]

As Abdush and Kariem concede, "[t]he government is allowed to identify flaws or gaps in a defense theory." A/K Br. at 29 (citing United States v. Balter, 91 F.3d 427, 441 (3d Cir. 1996)). In Balter, we confirmed the principle that the Government "may not improperly suggest that the defendant has the burden to produce evidence," but concluded

---

[5] Under plain error review, we reverse "only if (1) there was an 'error'; (2) the error was 'plain'; (3) the error prejudiced or 'affect[ed] substantial rights'; and (4) not correcting the error would 'seriously affect[] the fairness, integrity or public reputation of judicial proceedings.'" United States v. Guyton, 144 F.4th 449, 458 (3d Cir. 2025) (quoting United States v. Olano, 507 U.S. 725, 732 (1993) (citation modified)).

7

that the prosecutor committed no violation as he only "commented on the failure of [the defendant's] attorney to point to any evidence in the record supporting his theory of what occurred." 91 F.3d at 441. Here, the Government did not claim that Abdush and Kariem had the burden to produce evidence, nor did it comment on Abdush and Kariem's failure to testify. Rather, the Government pointed out that none of the evidence presented to the jury suggested that the Dubose brothers had any legitimate reason to have purchased the number of insured postage labels that they did.[6] Accordingly, the District Court did not err, much less plainly so, in denying their requests for a new trial based on the Government's statements during its closing argument.

**E. The District Court Did Not Err in Revoking Zumar's Pro Se Status**

Zumar argues that the District Court violated his Sixth Amendment right of self-representation by revoking his pro se status. We exercise plenary review over a claim alleging that a defendant was improperly deprived of his right to self-representation. United States v. Noble, 42 F.4th 346, 350 (3d Cir. 2022).

A criminal defendant has a right to represent himself during trial so long as he "knowingly and intelligently" waives his right of assistance of counsel. Faretta v.

---

[6] After commenting on what could be determined from bank records, the Government then stated what could not:

> Let's not forget, before we talk about what they do with those postage labels, what possible legitimate reason would these guys ever have to buy that many insured postage labels? There's no legitimate reason, not a drop of evidence that you ever saw in this case, that would provide one legitimate basis for all of those purchases.

J.A.1661.

California, 422 U.S. 806, 835 (1975).  The right of self-representation is not absolute. Indeed, the Supreme Court explained that a "trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." Faretta, 422 U.S. at 834 n.46; see also McKaskle v. Wiggins, 465 U.S. 168, 173 (1984). We discern no error with the District Court's decision to revoke Zumar's right to self-representation.  Zumar disrupted the court's proceedings on multiple occasions.  On the eve of trial, he essentially refused to answer the District Court's clear questions by stating that he did not understand them, despite his consistent, unhindered ability to participate in meaningful exchanges until that point.  In light of these circumstances, the District Court "exercise[d] patience" as we have previously asked district courts to do, United States v. Taylor, 21 F.4th 94, 104 (3d Cir. 2021), and terminated Zumar's self-representation only after he made it nearly impossible to continue the proceeding.

Zumar also contends that the "District Court wrongfully denied [his] right to counsel of choice," Zumar Br. at 23, after he purported to fire her on April 24, 2023.  However, he did not identify to the court any newly retained counsel.  In addition, neither in the District Court nor here has Zumar explained why he wanted to fire his appointed counsel, United States v. Welty, 674 F.2d 185, 188 (3d Cir. 1982) (a defendant must show "good cause" to substitute their counsel during trial), and a defendant does not have an "absolute right to a particular counsel."  United States ex rel. Carey v. Rundle, 409 F.2d 1210, 1215 (3d Cir. 1969); United States v. Gonzalez-Lopez, 548 U.S. 140, 151 (2006).  Therefore, we are also unpersuaded by this argument.

9

**F. The Indictment Was Sufficient and Provided the District Court with Subject Matter Jurisdiction**

Zumar argues that the District Court erred in dismissing his pretrial motion to dismiss the Indictment without making a factual finding on the record regarding whether the Indictment was facially sufficient. We exercise plenary review over a challenge to the sufficiency of an indictment. United States v. Whited, 311 F.3d 259, 262 (3d Cir. 2002).

We have held that, "[g]enerally, an indictment will satisfy the[] requirements [of Rule 7(c)] where it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." United States v. Huet, 665 F.3d 588, 595 (3d Cir. 2012) (rev'd on other grounds by United States v. Hill, 98 F.4th 473, 483 (3d Cir. 2024)). Rule 12(b)(3)(B)(v) allows pretrial challenges to an indictment that "fails to charge an essential element of the crime." United States v. Stock, 728 F.3d 287, 292 (3d Cir. 2013) (cleaned up). First, contrary to Zumar's argument, the District Court *did* make a finding that the Indictment was sufficient in ruling upon Zumar's pro se motion. Second, we agree with the District Court's substantive conclusion that the Indictment met the requirements of Rules 7 and 12(b): it set forth the statutes with which Zumar was charged with violating, the elements thereof, and detailed allegations of the fraud scheme, including the time period in which the scheme was perpetrated. Thus, the District Court did not err in rejecting Zumar's challenge to the Indictment pursuant to Rules 7 and 12(b).

**G. The Indictment Was Not Constructively Amended and There Was No Prejudicial Variance**

10

Zumar argues that the Indictment was constructively amended and that there was a prejudicial variance of the Indictment's charges created by the Government's evidence. We ordinarily exercise plenary review over these issues, but because Zumar did not raise them in the District Court, we will only grant relief if there was plain error. United States v. Daraio, 445 F.3d 253, 259 (3d Cir. 2006). Neither argument has merit.

"An indictment is constructively amended when, in the absence of a formal amendment, the evidence and jury instructions at trial modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense [charged in] the indictment[.]" Id. at 259–60. Zumar argues that while the Indictment charged him with, *inter alia*, mail, bank, and wire fraud, he was actually convicted of violating 18 U.S.C. § 288[7] because testimony at trial discussed this provision and because the Government described his criminal conduct as entailing a scheme to submit false claims of postal loses. We disagree. The District Court's jury instructions identified the charges from the Indictment and methodically walked the jury through the elements of those charges. Though the evidence at trial also may support a conviction under 18 U.S.C. § 288, Zumar was convicted for crimes charged in the Indictment, based on the District Court's instructions on those offenses as applied by the jury to the extensive evidence introduced during trial related to the fraud scheme.

---

[7] This section makes it a misdemeanor to provide false claims for postal losses. 18 U.S.C. § 288.

11

<u>Daraio</u>, 445 F.3d at 260 (we presume that the jury followed the District Court's clear instructions).

A prejudicial variance occurs "where the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." <u>United States v. Castro</u>, 776 F.2d 1118, 1121 (3d Cir. 1985). Zumar, however, fails to explain how the Government's evidence at trial proved a different scheme from the one set forth in the Indictment. Instead, he essentially argues that the Government failed to prove its case, which is a sufficiency-of-the-evidence argument, and one we reject for the reasons set forth in Section A, *supra*.

**H. The Remainder of Zumar's Arguments on Appeal are Forfeited**

Zumar raises other arguments on appeal for which he has offered no argument and/or factual support. Under Federal Rule of Appellate Procedure 28(a), appellants must set forth their "contentions and the reasons for them, with citations to the authorities and parts of the record on which [they rely]." While we liberally construe a pro se party's filings, <u>Erickson</u>, 551 U.S. at 94, pro se litigants must still conform to procedural rules and support their arguments. <u>See</u> <u>Vogt v. Wetzel</u>, 8 F.4th 182, 185 (3d Cir. 2021). We therefore hold that these arguments are forfeited, <u>Garden</u>, 495 F.3d at 296 n.7.

* * * * *

For the reasons set forth above, we will AFFIRM the convictions of all Defendants and Zumar's sentence.

12